[Cite as *State v. Crawford*, 2019-Ohio-3123.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1296

      Appellee                                   Trial Court No. CR0201602690

v.

Marcus Crawford                              **DECISION AND JUDGMENT**

      Appellant                                  Decided:  August 2, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} In this cold case, the state alleged that the defendant-appellant, Marcus

Crawford, raped "D.M." on or about May 21, 2008.  The victim reported the rape and

underwent a sexual assault examination.  Evidence collected from the examination was

tested for DNA and preserved, but the case remained unsolved for years.  In 2016,

Crawford was arrested in a separate case, and following DNA testing, a match was made between Crawford and the 2008 sample provided by the victim. Crawford was indicted, tried, and convicted (in this case), and the Lucas County Court of Common sentenced him to serve 11 years in prison.

{¶ 2} On appeal, Crawford alleges that the trial court violated his right to a speedy trial and that his conviction was not supported by legally sufficient evidence and was against the manifest weight of the evidence. For the following reasons, we affirm the lower court's judgment.

## I. Background and Facts

{¶ 3} In May of 2008, the victim was 20 years old, living with her mother, on Spencer Street in Toledo, Ohio. The victim was born with Williams Syndrome, a genetic disorder that causes developmental and learning disabilities. According to her mother, the victim reads at a first grade reading level and has heart and lung problems requiring surgeries "for the rest of her life."

{¶ 4} On the evening of May 20, 2008, the victim was at her friends' home, two blocks away. Around 1:00 a.m. (now May 21, 2008), she called her mother, "M.G.," to ask that her mother meet her half-way because she was ready to leave. M.G. said that it was too unsafe to walk the streets and that she should call back in the morning. The victim left anyway, and according to the state, she was raped while on her way home.

2.

{¶ 5} The next evening, May 22, 2008, the victim sought treatment for her injuries at St. Vincent Hospital. According to the report that was prepared by the sexual assault nurse examiner ("SANE"), the victim gave the following account:

I was walking to a friend's house and this boy, a friend's cousin stopped me and asked me how I was doin * * *. He pulled me to an alley by an abandoned house and I thought why couldn't he talk to me out there. Then he said I owed him something * * * I said I got no money so he choked me [and] told me he had a gun in his pocket and said don't make me do something I don't want to do. I told him no and asked what his problem was, he wanted sex I said no he pulled my pants down and stuck it in. * * * Pt asked "In your butt." Pt states yah, I think so. Pt asked "In your vagina?" Pt states "Yah I think so." Pt denies any oral but states he kissed her right nipple.

{¶ 6} Elsewhere in the report, the SANE examiner indicated that the victim's attacker made "Oral Contact" with the victim's "right breast" and also that the victim had not bathed or showered since the assault. Samples from the victim's clothing and body were collected and sealed in a rape kit.

{¶ 7} At the 2017 trial, the victim provided similar testimony but added a few details, including that her attacker had called her by name that night. Although she did not know his name, she had "seen him a couple of times." The victim also testified that she went to the hospital when she saw "blood coming out" while using the bathroom.

3.

{¶ 8} The victim's mother, M.G., testified that the victim was "hysterical" when she got home that night, saying, "Mom, I just got raped," and it took several hours for the victim to calm down.

{¶ 9} Toledo Police Officer Matthew Naujok testified that he has worked in "field operations" for all of his 16 years with the department. In that role, one of his jobs is to collect and book evidence. In 2008, Naujok collected, and acknowledged receiving, the victim's rape kit from the SANE examiner. At trial, he identified the rape kit as the one he retrieved back in 2008. After picking it up, he took it to the safety building and booked it into the property room. The rape kit was then sent to the bureau of criminal investigation ("BCI") in Bowling Green, Ohio for testing.

{¶ 10} As explained at trial, once BCI receives a rape kit, a forensic biologist opens the kit, documents its contents, and then conducts serology testing, looking for the presence of bodily fluids or stains. Samples are then collected, tested and compared to a database of known DNA profiles within the Combined DNA Index System ("CODIS"). At trial, the state's DNA expert, Hallie Garofalo Dreyer, testified that BCI uses DNA to determine if an individual has "come in contact * * * or not * * * with [another] individual." A DNA profile can indicate "to a certainty who the contributors are."

{¶ 11} Toledo Police Detective Rebecca Kinkaid works in the Special Victims Unit, which is charged with investigating sexual assault cases. Kinkaid testified as to the contents of a report prepared by Raymond Peoples, now deceased, who performed the forensic biology screening in 2008. His report indicates that a sample taken from the

4.

victim's vagina was "presumptive positive" for blood but no semen was identified. Similarly, no semen was identified in the anal or oral samples. A sample taken from the victim's underwear was presumptive positive for blood, and a single sperm cell was identified on the underwear. According to Kinkaid, there were no leads on a known subject in 2008, and the case remained inactive until the summer of 2016.

{¶ 12} On July 11, 2016, Crawford was indicted, in a different case, on one count of rape of a person less than 13 years old in violation of R.C. 2907.02(A)(1)(b) (hereinafter "the 2016 case"). As part of the state's investigation into that case, Crawford's DNA was collected and sent to BCI for testing.[1]

{¶ 13} Dreyer received Crawford's DNA sample from the Toledo Police Department. After testing it, she was able to include Crawford as a contributor to the amylase sample taken from the victim's chest. Amylase is an enzyme that is present in its highest concentration in saliva, which Dreyer characterized as a "rich source[] of DNA." Dreyer also testified that the estimated rarity of this profile * * * is rarer than * * * one in one trillion unrelated individuals. Dreyer also testified that the 2008 sperm

---

[1] As for the 2016 case, a jury convicted Crawford of rape, and the trial court sentenced him to a mandatory prison term of ten years to life on August 1, 2017. (Lucas C.P. No. CR0201602264.) We recently affirmed that conviction and sentence in *State v. Crawford*, 6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660. During the trial in *this* matter, the jury was told nothing about the 2016 case other than the following stipulation: "The DNA sample was taken by means of a buccal swab and was sent to the [BCI] for testing. The buccal swab with the Marcus Crawford's DNA [sic] was tested and is reflected in BCI report number 16-22880. The jury is to accept these facts as true."

5.

sample taken from the victim's underwear was "not sufficient for comparison," and therefore, Crawford could not be ruled in, or out, as the contributor.

{¶ 14} Detective Kinkaid was notified by BCI that a DNA sample in the victim's 2008 rape kit matched Crawford's DNA. Kinkaid then reviewed the old case file and interviewed the victim. Kinkaid testified that the victim's testimony was "very" similar to the statement she gave to the police back in 2008. Kincaid also interviewed Crawford, and the interview was played for the jury. During the 13-minute interview, Crawford denied knowing the victim and further denied raping or having sex in an alley with anyone named "D."

{¶ 15} On September 15, 2016, Crawford was indicted on one count of rape, in violation of R.C. 2907.02(A)(2) and (B), a first-degree felony. On July 31, 2017, the case was tried before a jury, and Crawford was found guilty as charged. By order dated August 4, 2017, the trial court sentenced Crawford to serve a mandatory term of 11 years in prison. It ordered that the sentence be served consecutively to the sentence imposed in the 2016 case. Crawford appealed, and through counsel, raises the following assignments of error.

Assignment of Error One: The trial court violated appellant's right to a speedy trial under the Sixth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 10.

6.

Assignment of Error Two: Appellant's convictions [sic] are not

supported by sufficient evidence and are against the manifest weight of the

evidence.

## II. Law and Analysis

## A. Crawford's Speedy-Trial Rights were not Violated

{¶ 16} In his first assignment of error, Crawford contends that his constitutional

speedy-trial rights were violated. His arguments in support, however, focus on his

statutory right to a speedy trial. The state counters that Crawford waived this error by not

raising it in the trial court and, regardless, that he was brought to trial within the statutory

time frame.

## 1. Statutory Speedy-Trial Right

{¶ 17} The right to a speedy trial is guaranteed by the Sixth and Fourteenth

Amendments to the U.S. Constitution and Article I, Section 10, of the Ohio Constitution.

*State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). The Ohio legislature

adopted the provisions of R.C. 2945.71-.73 to implement these constitutional guarantees.

*Id.* Under the statutory scheme, the state is required to bring a defendant charged with a

felony to trial within 270 days after his arrest. R.C. 2945.71(C)(2). If the defendant

makes a prima facie showing that his speedy trial time has elapsed, the burden shifts to

the state to demonstrate that the defendant was timely brought to trial. *State v. Taylor*,

6th Dist. Lucas No. L-98-1375, 2001 Ohio App. LEXIS 4503, 5-6 (Oct. 5, 2001). If the

7.

state fails to do so, the trial court is required to dismiss the charges against the defendant. R.C. 2945.73(B).

{¶ 18} Here, Crawford was indicted on September 15, 2016 and brought to trial on July 31, 2017, which was 320 days after his indictment. As this was more than the 270-day limit in R.C. 2945.71(C)(2), Crawford has made a prima facie showing that his speedy-trial time elapsed before trial. Thus, the burden shifts to the state to show that Crawford was timely brought to trial.

{¶ 19} The state argues that Crawford's case was subject to numerous tolling events that brought his trial date well within the statutory limit. We agree.

### a. Relevant Events

{¶ 20} The following events are relevant to our speedy-trial determination:

| Date | Event |
| --- | --- |
| July 21, 2016 | Crawford was arrested and jailed lieu of bond in the 2016 case. |
| September 15, 2016 | Crawford was indicted in this case. |
| October 4, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on November 1, 2016, at Crawford's request. |
| November 1, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on November 22, 2016, at Crawford's request. |
| November 22, 2016 | The trial court held a pretrial at which Crawford was not present and rescheduled the matter for a pretrial on November 29, 2016, at Crawford's request. |

8.

| | |
|---|---|
| November 29, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on December 13, 2016, at Crawford's request. |
| December 13, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on December 20, 2016, at Crawford's request. |
| December 20, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on January 17, 2017, at Crawford's request. |
| January 17, 2017 | Crawford appeared for a pretrial. The trial court set a jury trial for February 27, 2017. |
| January 20, 2017 | Crawford filed a motion for relief from prejudicial joinder. |
| January 30, 2017 | The state filed a notice that it did not intend to join this case and the 2016 case. |
| February 28, 2017 | Crawford appeared for a pretrial. The trial court and counsel discussed the motion for relief from joinder, but the court did not issue a ruling. The court granted the state's motion to continue and set a jury trial for March 20, 2017. |
| March 14, 2017 | Crawford appeared for a pretrial at which his attorney made an oral motion to withdraw. The trial court held the motion in abeyance and rescheduled the matter for a pretrial on March 21, 2017, at Crawford's request. |
| March 21, 2017 | Crawford appeared for a pretrial at which the trial court granted counsel's motion to withdraw. The trial court appointed new counsel (J. Viren), rescheduled the matter for a pretrial on April 18, 2017, and set the 2016 case for trial on May 8, 2017. |
| April 18, 2017 | Crawford appeared for a pretrial at which the May 8 trial date (for the 2016 case) was confirmed (and which went forth as scheduled). |

| | |
|---|---|
| May 16, 2017 | Crawford's counsel requested discovery disclosures pursuant to Crim. R. 16(H). The trial court set a jury trial for June 20, 2017. |
| June 1, 2017 | The state responded to Crawford's supplemental discovery requests. |
| June 6, 2017 | Crawford moved to vacate the trial date. |
| June 20, 2017 | The trial court vacated the June 20, 2017 trial date and reset it for July 31, 2017, at Crawford's request. Crawford's counsel moved to withdraw from case due to conflict of interest with Crawford. The trial court appointed new counsel (Simmons) to represent Crawford. |
| July 31, 2017 | Crawford's jury trial began. |

## b. Applicable Law

{¶ 21} Under R.C. 2945.73(B) an accused is required to make a motion to dismiss based on a speedy-trial violation "at or prior to the commencement of trial * * *." If an appellant fails to do so, we review the issue only for plain error. *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 35, citing *State v. Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, ¶ 20. Because Crawford did not file a motion in the trial court, we review his speedy-trial claim for plain error. Plain error is an error that affects an appellant's substantial rights. Crim.R. 52(B). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

10.

**{¶ 22}** At its most basic, a speedy-trial calculation requires us to "'simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72.'" *State v. Vrapi*, 10th Dist. Franklin No. 11AP-700, 2012-Ohio-1018, ¶ 6, quoting *In re F.S.*, 10th Dist. Franklin No. 11AP-244, 2011-Ohio-6135, ¶ 7. When the defendant is held in custody in lieu of bail, each day he is held counts as three days for speedy-trial purposes. R.C. 2945.71(E). However, the triple-count provision of R.C. 2945.71(E) applies only when the defendant is "held in jail solely on the pending charge." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 7.

**{¶ 23}** The reasons for charging days to the defendant (i.e., tolling speedy-trial time) are outlined in R.C. 2945.72. The exceptions in the statute are the only reasons that speedy-trial time can be extended. *Id.* ("The time within which an accused must be brought to trial * * * may be extended *only* by the following * * *.") (Emphasis added.) And any extension must be strictly construed against the state. *City of Toledo v. Skarlov*, 6th Dist. Lucas Nos. L-15-1303 and L-15-1304, 2017-Ohio-137, ¶ 7.

**{¶ 24}** Here, several types of tolling events are relevant to our analysis.

**{¶ 25}** First, under R.C. 2945.72(C), speedy-trial time is tolled during "[a]ny period of delay necessitated by the accused's lack of counsel," as long as the delay is not due to the trial court's lack of diligence in appointing counsel. *State v. Perkins*, 2d Dist. Montgomery No. 21515, 2007-Ohio-136, ¶ 9 ("Time spent without the benefit of counsel must be tolled.").

11.

**{¶ 26}** Second, under R.C. 2945.72(E), when the defendant files a motion *or* demand for discovery, time is tolled for a "reasonable time until the motion is responded to and ruled upon." *Sanchez* at ¶ 26; R.C. 2945.72(E); *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus. We have previously recognized that a "reasonable time" for the state to respond to a discovery demand is 30 days. *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 21. When determining the "reasonable" tolling period incurred by a defendant's motion, a reviewing court must consider the particular circumstances of the case, the complexity of the facts and difficulty of the legal issue involved, and the time constraints on the trial court. *State v. Arrizola*, 79 Ohio App.3d 72, 76, 606 N.E.2d 1020 (3d Dist.1992) (finding that a 228-day period between filing of motion to suppress in an OVI case and trial court's decision was unreasonable when "[n]othing appear[ed] on the record which would justify this amount of time."); *see also State v. Garrett*, 6th Dist. Erie No. E-02-015, 2013-Ohio-5185, ¶ 21 (finding that a six-week delay in ruling on motion to sever was reasonable because the recently-appointed visiting judge needed time to familiarize himself with the case, which involved several felonies, including murder.); *State v. Ford*, 180 Ohio App.3d 636, 2009-Ohio-146, 906 N.E.2d 1155 (1st Dist.), paragraph two of the syllabus (finding that a five-month delay was unreasonable and that, "[a]lthough a defendant's motion to sever charges tolls the speedy-trial time, the trial court cannot take an unlimited amount of time to rule on the motion; after a reasonable amount of time has passed, the defendant's speedy-trial time begins to run again.").

12.

{¶ 27} And third, under R.C. 2945.72(H), time is tolled during any continuance requested by the defendant and any reasonable continuance required by the state or the court. In addition to being "reasonable," a continuance for the benefit of the state or the court must also be "necessary." *State v. Willis*, 6th Dist. Wood Nos. WD-15-006 and WD-15-007, 2016-Ohio-616, ¶ 17, citing *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988). Whether such a continuance is reasonable and necessary depends on the facts and circumstances of the case. *Saffell* at 91. To support the reasonableness of and necessity for a continuance granted other than upon the defendant's motion, "a trial court must journalize the continuance before the expiration of the time limit set forth in R.C. 2945.71 and must state the reason for the continuance." *State v. Stamps*, 127 Ohio App.3d 219, 224, 712 N.E.2d 762 (1st Dist.1998); *State v. Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053, 938 N.E.2d 419, ¶ 47 (6th Dist.). If the journal entry does not contain the reason for the continuance, the reviewing court can look to other evidence in the record to determine whether the continuance was reasonable and necessary. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 62; *Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, at ¶ 29. Time is chargeable to the defendant as long as the record affirmatively demonstrates the reasonableness of and the necessity for the continuance. *Myers* at ¶ 62.

{¶ 28} We will now apply these general legal principles to Crawford's case.

13.

### c. Speedy-Trial Calculation

**{¶ 29}** At the time Crawford was indicted on September 15, 2016, he was already being held in jail on a different matter, i.e., the 2016 case. He remained in jail through both trial dates until he began serving his prison sentences in August of 2017. Because the triple-count provision of R.C. 2945.71(E) applies only when the defendant is "held in jail solely on the pending charge," Crawford was not entitled to any triple credit for his days in custody in the instant case, i.e., between his September 15, 2016 indictment and his July 31, 2017 trial. *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 7.

**{¶ 30}** Crawford, however, argues that he was entitled to triple-time credit between May 8, 2017 (his trial date in the 2016 case) and July 31, 2017 (his trial date in the instant case). We disagree. Because Crawford continued to be held in jail after his trial in the 2016 case while he awaited sentencing, he is not entitled to have those days after May 8, 2017 triple counted. *See, e.g., State v. Collins*, 91 Ohio App.3d 10, 16, 631 N.E.2d 666 (6th Dist.1993) ("Prior to sentencing, no order of commitment exists and defendant is still, in effect, being held for the pending charge.").

**{¶ 31}** We also find that many tolling events in this case attributed to Crawford's conduct. [2] Crawford made many of the same arguments in his appeal in the 2016 case. Where Crawford's specific argument, relative to a particular event, is the same, we

---

[2] In addition, the state argues that a 14-day continuance, which was granted at the prosecutor's request on February 27, 2017, also tolled the speedy-trial clock. Whether

14.

reference our finding in that case. *See generally Crawford,* 6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660, at ¶ 20-48.

{¶ 32} First, between October 4, 2016 and January 17, 2017, Crawford requested six continuances. Each of these events resulted in time tolling. R.C. 2945.72 (H) (speedy-trial time is tolled during "the period of any continuance granted on the accused's own motion * * *"). *See also State v. Willis,* 6th Dist. Wood Nos. WD-15-006, WD-15-007, 2016-Ohio-616, ¶ 11 ("[W]here an accused requests a continuance of a pretrial, that request tolls the statutory speedy trial period from the date of the request until the date of the rescheduled hearing."). We find that the speedy-trial time clock was tolled for 106 days.

{¶ 33} Second, on January 20, 2017, Crawford filed a motion for relief from prejudicial joinder in anticipation that the state would attempt to try this case and the 2016 case together. On January 30, 2017, the state filed a notice that it did not intend to join the cases. Although the parties and the trial court discussed the motion at the pretrial on February 28, the court did not issue a ruling until May 8, 2017, the day that Crawford's trial began in the 2016 case.

{¶ 34} Crawford's motion tolled speedy-trial time for a "reasonable time" to allow the trial court to rule. *Sanchez,* 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at

this continuance was "reasonable and necessary" is immaterial, however, because it would not affect our conclusion that Crawford was brought to trial well within 270 days of his indictment as required by R.C. 2945.71(C)(2). *See also Crawford* at ¶ 41, fn. 2.

15.

¶ 26. Here, considering that the issues raised in Crawford's motion were uncomplicated and the state promptly informed the court that it was not going to try the cases together, we see no reason to toll the entire period (from the time Crawford filed his motion to the trial court's ruling against Crawford). Instead, based on the circumstances of the case, we find that 10 days—from January 20, 2017, when Crawford filed his motion, to January 30, 2017, when the state filed its notice that it would not try the cases together—was a reasonable time for the court to resolve the motion, and speedy-trial time was tolled during that period. *Accord Crawford* at ¶ 39-40.

{¶ 35} Third, at a March 14, 2017 pretrial, Crawford requested a continuance, and on March 21, 2017, Crawford's attorney withdrew, which resulted in time tolling until the rescheduled pretrial on April 18, 2017, a total of 35 days. R.C. 2945.72(H) and (C) (speedy-trial time is tolled during "[a]ny period of delay necessitated by the accused's lack of counsel * * *," as long as the delay is not due to the trial court's lack of diligence in appointing counsel). *Accord Crawford* at ¶ 41.

{¶ 36} Fourth, Crawford filed a discovery demand on May 16, 2017, to which the state responded on June 1, 2017. We find that the state's response time of 17 days was reasonable and therefore tolled the speedy-trial time for that period of time. *Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, at ¶ 21.

{¶ 37} Fifth, on June 6, 2017, Crawford's counsel moved to vacate the June 20, 2017 trial due to a scheduling conflict. According to the motion, Crawford waived his speedy trial time. On June 9, 2017, defense counsel moved to withdraw from the case

16.

due to a breakdown in the attorney-client relationship (specifically because Crawford filed a grievance against him). The trial court granted the motions on June 20, 2017, appointed new counsel and set the matter for trial on July 31, 2017. We find that the speedy-trial time clock was tolled from June 6 until July 31, 2017, a period of 56 days.

{¶ 38} In sum, we calculate a total of 224 days of tolling. When we subtract that number from 320 (the number of days from the indictment until the trial), the total is 96. Because the number of days chargeable to the state, 96, is less than the 270 days within which the state was required to bring Crawford to trial under R.C. 2945.71(C)(2), we conclude that Crawford's statutory speedy-trial right was not violated. Accordingly, we find no plain error.

### 2. Constitutional Speedy-Trial Rights

{¶ 39} Although Crawford did not make any arguments related to the violation of his constitutional speedy-trial rights, he assigned violation of his constitutional rights as error. We find no error.

{¶ 40} To determine whether a defendant was deprived of these constitutional rights, we must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy-trial rights, and (4) the prejudice to the defendant. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997), and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). But we must first make a threshold determination that the delay in bringing the defendant to trial was

17.

"presumptively prejudicial"; if it was not, we need not inquire into the other factors. *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 23. The Supreme Court of Ohio has recognized that a delay becomes presumptively prejudicial as it approaches one year. *Adams* at ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1. Regardless, whether the length of a delay is presumptively prejudicial is dependent upon the facts and circumstances of each case. *Hull* at ¶ 23.

{¶ 41} Based on our review of the record, we cannot conclude that the 320-day delay in this case was presumptively prejudicial—particularly because most of the delay was caused by Crawford requesting numerous continuances and needing new appointed counsel. Crawford does not present any arguments to the contrary. Thus, we conclude that his constitutional rights were not violated and no plain error occurred. *Accord Crawford* at ¶ 45-47.

{¶ 42} Crawford's first assignment of error is not well-taken.

### B. Crawford's conviction is supported by legally sufficient evidence and is not against the weight of the evidence.

{¶ 43} In his second assignment of error, Crawford argues that his rape conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence.

{¶ 44} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*,

18.

78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in the light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 45} In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks* at paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim). We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386.

{¶ 46} While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386. Under the manifest weight of the evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive—the state's or the defendant's?

19.

*Id.* at ¶ 25. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387.

{¶ 47} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 48} A conviction should be reversed on manifest weight grounds only in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175. Moreover, "'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *State v. Brown*, 10th Dist. Franklin No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. Franklin No. 96APA04-511, 1997 Ohio App. LEXIS 416 (Feb. 6, 1997).

{¶ 49} With the above framework in mind, we begin with Crawford's argument that his conviction is not supported by legally sufficient evidence. Crawford was

20.

convicted of rape in violation of R.C. 2907.02(A)(2) and (B), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" includes "vaginal intercourse between a male and female * * *." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal * * * intercourse." *Id.* [3]

Crawford argues that the state failed to put forth legally sufficient evidence that he was the perpetrator. He cites the victim's failure to identify him as a suspect, and the fact that the sample taken from the victim's underwear was inconclusive. Of course, the jury also heard evidence that Crawford's DNA did match the amylase sample taken from the victim's chest *and* that the person who raped her and who bit her chest were one and the same. Therefore, despite the fact that the victim was unable to identify Crawford, the DNA evidence, if believed by the jury, was sufficient to establish that Crawford was the perpetrator.

{¶ 50} Crawford also complains that there was a "paucity of evidence as to penetration." We disagree. The victim specifically testified that her attacker "pulled my pants down * * * and stuck his dick in me." She testified that she went to the hospital after going "to the bathroom and [seeing] blood coming out" which was corroborated by medical records indicating "redness," and "pain" and a half-inch laceration in her vagina.

---

[3] Effective March 22, 2019, Ohio's criminal statutes were extensively amended by 2017 S.B. No. 201. None of the amendments are applicable to Crawford's case, however, so all of our citations to the Revised Code refer to the former versions of the statutes that are applicable to Crawford's crimes.

21.

After viewing the evidence in the light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the offense of rape proven beyond a reasonable doubt and that Crawford's conviction is supported by legally sufficient evidence.

{¶ 51} Finally, Crawford argues that the rape conviction is against the weight of the evidence. He claims that the evidence presented at trial "leads equally to a conclusion" that, while he may have left his DNA on the victim's chest, he did not rape her. Instead, he argues that the evidence is "consistent" with an alternative version of events, such as "a male touching himself, then touching [the victim's] genital area or underwear, and depositing slight amounts of sperm." Crawford's novel argument, offered for the first time in this appeal, was not presented to the jury, and is therefore, wholly theoretical, if not fanciful. At best, Crawford has merely argued that certain evidence was susceptible to different interpretation by the jury, even though no inconsistent evidence was presented at trial. In either event, had any actual evidence been presented, "[a] defendant is not entitled to reversal on manifest-weight grounds merely because inconsistent evidence is presented at trial." *State v. Peterson*, 10th Dist. Franklin No. 12AP-646, 2013-Ohio-1807.

{¶ 52} Moreover, the state introduced evidence against Crawford at trial, most notably, the victim's testimony that her attacker did rape her. "A conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution testimony." *State v. Dean*, 6th Dist. Lucas No. L-16-1301, 2018-Ohio-1740,

22.

¶ 44, quoting *State v. Houston*, 10th Dist. Franklin No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds). Here, the jury found the victim's testimony credible, and we extend special deference to the jury's credibility determinations given that the jury had the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 53} Accordingly, we find that Crawford's conviction is not against the manifest weight of the evidence. His second assignment of error is not well-taken.

### III. Conclusion

{¶ 54} Based on the foregoing, the August 4, 2017 judgment of the Lucas County Court of Common Pleas is affirmed. Crawford is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.             _____
                                                      JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.              _____
CONCUR.                                                  JUDGE

                                              _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.