**[Cite as *State v. McCollough*, 2020-Ohio-4703.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                    Court of Appeals No. H-18-024

    Appellee                                Trial Court No. CR 20171116

v.

Trent W. McCullough                        **DECISION AND JUDGMENT**

    Appellant                              Decided:  September 30, 2020

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney, for appellee.

Paul Dolce, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** On January 4, 2017, appellant, Trent McCollough, called 911 to alert authorities that a person was shot at his house.  When the police arrived, appellant was on top of the victim attempting to perform CPR or apply pressure to wounds.  The victim

was shot in his right forearm and the right side of his chest. The victim died before he reached the hospital.

{¶ 2} Earlier in the night, appellant and the victim were sitting at the kitchen table where appellant was cleaning a handgun. When appellant-lowered the gun to the table after he was finished, it discharged and the bullet struck the victim. Appellant was arrested later the same night. A search warrant was later issued for appellant's residence, where several marijuana plants and additional firearms were found by the police.

{¶ 3} On February 10, 2017, appellant's matter was transferred from Norwalk Municipal Court to the Huron County Court of Common Pleas and he was indicted on one count of reckless homicide, a felony of the third-degree, in violation of R.C. 2903.04 and one count of illegal cultivation of marijuana, a misdemeanor of the fourth-degree, in violation of R.C. 2925.04(A) and (C)(5) in case No. 2017 CRI 0036. Appellant retained the same counsel who represented him on other matters and entered a not guilty plea to all the charges.

{¶ 4} During the course of the proceedings, appellant signed several waivers of his speedy trial rights, motions for continuances, and motions for discovery. He also filed a motion to have a firearm expert be provided him at state's expense. The trial court denied this motion.

{¶ 5} On November 20, 2017, appellant was again indicted under a separate case number with the same counts of reckless homicide and illegal cultivation of marijuana. He was also charged with two counts of involuntary manslaughter, a first-degree felony,

2.

in violation of R.C. 2903.04(B) and (C), one count of violating a protection order, a third-degree felony in violation of R.C. 2919.27(A)(2) and (B)(4), and one count of violating a protection order, a third-degree felony, in violation of R.C. 2919.27(A)(2) and (B)(2), in case No. 2017 CRI 1116. These new counts and the count of reckless homicide had a three-year firearm specification under R.C. 2941.145(A) attached. Appellee then dismissed case No. CRI 2017 0036.

{¶ 6} On December 21, 2017, original trial counsel filed a motion to withdraw because based on the new charges, counsel was a potential witness on the violation of a protection order count. The trial court permitted retained counsel to withdraw on January 25, 2018.

{¶ 7} When appellant was unable to obtain new private counsel, the Huron County Public Defender's Officer was appointed to him by the trial court. A few months later, the office moved to withdraw from representation because the public defender's office was overburdened. The trial court permitted the public defender's office to withdraw and appointed appellant his third counsel. This counsel represented appellant throughout the pendency of the matter.

{¶ 8} After the appointment of new counsel, appellant filed a motion to dismiss based on speedy trial violations, which was denied by the trial court. On September 21, 2018, counsel also filed a motion to bar the admission of the state's firearms expert and photographs which appellant argued were gruesome. The trial court also denied this motion.

3.

{¶ 9} At trial, an Erie County Court of Common Pleas magistrate testified that he issued an ex parte Civil Stalking Protection Order on October 4, 2016, in which appellant was the respondent. The magistrate testified that he marked "Box 8" on the form which indicated that appellant would be under a firearms restriction. This firearm restriction meant that appellant was not permitted to purchase or possess any firearms while the order was in place.

{¶ 10} On October 12, 2016, appellant appeared before the magistrate pro se and sought a continuance. The magistrate issued an order continuing the terms of the ex parte order. On December 13, 2016, appellant appeared with his original trial counsel and sought to come to an agreement between the parties. When an agreement could not be reached, the matter was continued to February 2017 and the ex parte order, and its firearm restriction, remained in effect. The magistrate testified that the order was in effect at the time of the January 4, 2017 incident, although there were questions as to whether appellant understood or was on notice he was not permitted to have a firearm. Appellant's original trial counsel testified at trial that he informed appellant he would not be under such a firearm restriction.

{¶ 11} Appellant was brought to trial on September 25, 2017, and was found guilty on all charges by a jury except for one charge of involuntary manslaughter. Appellant was sentenced to a term of 30 months for the remaining charge of involuntary manslaughter with three years of mandatory time attached for the firearm specification.

4.

Appellant was sentenced to time served for the charge of illegal cultivation. The other charges were merged into the involuntary manslaughter for the purposes of sentencing.

{¶ 12} Appellant brings forth five assignments of error for our review:

1. The jury's verdict was against the manifest weight of the edivence (sic), the sufficiency of the evidence, and the court erred in denying the defendant's criminal rule 29 motion for acquittal.

2. The court erred in not dismissing the indictment due to defendant's speedy trial rights being violated.

3. The court erred by admitting gruesome photographs of the decedent and allowing said photographs to be prsented (sic) to the jury.

4. Defendant was denied effective assistance of counsel.

5. The trial court erred in denying defendant's motion to dismiss based upon alleged Brady law violations and erred in preventing the defendant from presenting evidence to demonstrate that he was not under a firearms restriction.

**Speedy Trial**

{¶ 13} "The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10, of the Ohio Constitution." *State v. Crawford*, 6th Dist. Lucas No. L-17-1296, 2019-Ohio-3123, ¶ 17, citing *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). R.C. 2947.71, et seq., codify these guarantees in Ohio. The state is required to bring a defendant charged

5.

with a felony to trial within 270 days after his or her arrest.  R.C. 2945.71(C)(2).  If a defendant makes a prima facie demonstration that his speedy trial rights have been violated, the burden shifts to the state to demonstrate that the defendant was timely brought to trial.  *Id*., citing *State v. Taylor*, 6th Dist. Lucas No. L-98-1375, 2001 WL 1198648, *2-3 (Oct. 5, 2011).  If the state fails to meet its burden, the trial court must dismiss the charges against the defendant.  *Id*., citing R.C. 2945.73(B).

{¶ 14} A defendant is required to make a motion to dismiss on the basis that the defendant's speedy trial rights have been violated "at or prior to the commencement of trial."  R.C. 2945.73(B).  "At its most basic, a speedy-trial calculation requires us to ''simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and R.C. 2945.72.''"  *Crawford* at ¶ 22, quoting *State v. Vrapi*, 10th Dist. Franklin No. 11AP-700, 2012-Ohio-1018, ¶ 6.  Each day a defendant is held in custody in lieu of bail counts as three days for speedy-trial purposes.  R.C. 2945.71(E).  This provision only applies when the defendant is "held in jail solely on the pending charge."  *Id*., quoting *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 7.

{¶ 15} "[S]ubsequent charges made against an accused would be subject to the same speedy-trial constraints as the original charges, if additional charges arose from the same facts as the first indictment."  *State v. Baker*, 78 Ohio St.3d 108, 110, 676 NE.2d 883 (1997), citing *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989).  "'When new and additional charges arise from the same facts as did the original charge

6.

and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge.'" *Id.* at 111, citing *Adams* at 68.

{¶ 16} "When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *Id.* "For a waiver to be entered into knowingly, it is elementary that the defendant understand the nature of the charges against him, as well as know exactly what is being waived and the extent of the waiver. *Adams* at 69. The *Adams* court went on to find that although the defendant in that matter entered a valid waiver to the first charge, the defendant "did not have sufficient knowledge of the consequences of his actions at the time he executed waivers so that such actions could constitute valid waivers as to the right to a speedy trial of the second charge." *Id.*

{¶ 17} Below are the pertinent events in case No. CRI 2017 0036:

- January 4, 2017: Appellant is arrested on the charges contained in the first indictment.

- February 10, 2017: Case is transferred from Norwalk Municipal Court to the Huron County Court of Common Pleas.

- February 15, 2017: Trial date of April 4, 2017, set by trial court.

- March 10, 2017: Appellant files a motion for a continuance.

7.

- March 28, 2017: Appellant signs a waiver of speedy time until the new trial date of May 16, 2017, and 30 days thereafter.

- March 28, 2017: Appellant's motion for continuance is granted.

- March 29, 2017: Appellant is released from jail after posting bond.

- May 22, 2017: Appellant files motion for firearm expert at the state's expense.

- June 8, 2017: Trial court denies appellant's motion for a firearm expert.

- July 12, 2017: Appellant files a motion to continue the trial date.

- July 18, 2017: Trial court grants motion for continuance and reschedules trial date on September 26, 2017.

- September 19, 2017: Appellant files a motion for discovery.

- September 25, 2017: Appellee responds with discovery.

- November 6, 2017: Appellant seeks a continuance of the final pretrial.

- November 13, 2017: Motion for continuance granted.

- November 22, 2017: Appellee files to dismiss the matter.

- November 29, 2017: Motion to dismiss granted by the trial court.

- In case No. 2017 1116 the following pertinent events occurred:

- November 20, 2017: Appellant was indicted with the additional charges of violating a protection order and involuntary manslaughter.

8.

- November 21, 2017: Appellant signs a time waiver until the new trial date of February 6, 2018, and 30 days thereafter.

- December 11, 2017: Appellant requests a continuance of the pretrial hearing. The hearing is rescheduled for December 19, 2017, from the original date of December 11, 2017.

- December 19, 2017: Appellant's original counsel files a motion to withdraw because he may be a witness in the new charges against defendant.

- January 25, 2018: Trial court grants the motion to withdraw.

- February 13, 2018: Appellant signs a waiver of time until the new trial date of March 6, 2018, and 30 days thereafter.

- February 15, 2018: Appellant requests a continuance from February 15 to March 5, 2018, and seeks new counsel.

- March 6, 2018: Appellant signs a waiver of time until the new trial date of July 10, 2018, and 30 days thereafter.

- March 8, 2018: Trial Court appoints the Huron County Public Defender's office to represent appellant.

- April 23, 2018: Public Defender's Office moves to withdraw from representation.

- April 26, 2018: The motion to withdraw is granted and new counsel is appointed to appellant.

- May 21, 2018: Appellant files a motion for discovery.

- June 6, 2018: Appellee responds to the motion for discovery.

- June 28, 2018: Appellant files his motion to dismiss based on speedy trial violations.

- July 3, 2018:  Appellant waives speedy trial time until the new trial date of August 14, 2018, and 30 days thereafter.

- July 20, 2018: Appellant and appellee file a joint motion for a continuance of the trial date.

- July 25, 2018: The motion for continuance is granted.  Appellant waives time until the new trial date of September 25, 2018.

- September 24, 2018: Trial court denies the motion to dismiss.

- September 25, 2018: Trial begins.

- October 1, 2018: Appellant found guilty by a jury.

{¶ 18} First, we find that the second indictment did not extend the statute of limitations that appellee was required to bring appellant to trial.  The second indictment included charges that arose from the same facts and circumstances as the original charges and therefore must be included in the same time calculations.  Appellant was charged for violating the protection order because on the day that the victim was shot, appellant was prohibited from possessing a firearm.  The charges all stemmed from the same accidental discharge of a firearm appellant possessed on January 4, 2017.

10.

{¶ 19} Each time appellant waived his speedy trial rights, appellant signed a form from the trial court. This form states that appellant understands his speedy trial rights. By signing the form, he further agreed that it was in his best interest to waive the speedy trial time limitations and he understood that by signing the waiver, he may extend his time in jail. The form also states "[k]nowing these things, I do hereby voluntarily and intelligently waive the time limitation period defined above and consent to a trial date of [various trial dates] and waive the time within which trial must commence through the thirtieth (30th) day following said trial date." Appellant signed this form each time he agreed to waive his speedy trial rights before the trial court. Thus, essentially, appellant agreed to waive his speedy trial rights to each new trial date and 30 days thereafter.

{¶ 20} After a thorough review of the docket, and with little assistance from appellant's own brief, we find 629 days passed from appellant's arrest until his trial began. He therefore made a prima facie showing that his speedy trial rights were violated. However, it appears that much of this time period was tolled because appellant signed several time waivers, several motions for discovery, and had two attorneys withdraw from representation.

### Original Charges in the First Indictment

{¶ 21} A majority of the time, from appellant's arrest through the start of the trial, was tolled due to motions or time waivers, but there are a few limited time periods where time tolling did not take place. First, from January 4, 2017, through March 10, 2017,

appellant was held in jail in lieu of bond and no tolling events took place in this time period. This constituted 66 days that appellant served, which is multiplied by three, and equals 198 days. Next, in case No. 2017 0036, from June 15, 2017, through July 12, 2017, no tolling events took place, constituting an additional 26 days. From October 26, 2017, through November 6, 2017, there were no tolling events which accounted for 11 days that were not waived. Finally, from November 13, 2017, through November 20, 2017, no tolling events took place and accounted for another seven days. Thus, in total 242 days passed on the first case number and under the first indictment.

{¶ 22} Next, in case No. 2017 1116, from November 20, 2017, through November 21, 2017, no tolling events took place, constituting just one day that counts towards appellant's speedy trial time. The rest of the time was tolled from appellant's counsel seeking to withdraw, appellant's motions for discovery, and time waivers signed by appellant.

{¶ 23} For clarity, the following chart denotes the time the prosecution took to bring appellant to trial as it relates to the original charges of reckless homicide in violation of R.C. 2902.04 and cultivating marijuana in violation of R.C. 2925.04(A) and (C)(5).

12.

| Begin Date | End Date | Reason | Total Days |
|---|---|---|---|
| January 4, 2017 | March 28, 2017 | Jailed | 198 days |
| March 28, 2017 | June 16, 2017 | Time Waiver | Tolled |
| June 16, 2017 | July 12, 2017 | | 26 days |
| July 12, 2017 | July 18, 2017 | Continuance | Tolled |
| July 18, 2017 | October 26, 2017 | Time waiver | Tolled |
| October 26, 2017 | November 6, 2017 | | 11 days |
| November 6, 2017 | November 13, 2017 | Continuance | Tolled |
| November 13, 2017 | November 20, 2017 | | 7 days |
| Total for case No. 2017 0036: | | | 242 |
| November 20, 2017 | November 21, 2017 | | 1 |
| November 21, 2017 | March 6, 2018 | Time waiver | Tolled |
| March 6, 2018 | April 6, 2018 | Time waiver | Tolled |
| April 6, 2018 | August 20, 2018 | Time waiver | Tolled |
| August 20, 2018 | September 25, 2018 | Time waiver | Tolled |
| September 25, 2018 | | Trial begins | |
| Total for case No. 2017 1116: | | | 1 |
| Total for charges of reckless homicide and cultivating marijuana charges: | | | 243 |

{¶ 24} Therefore, appellant's speedy trial rights were not violated by the trial court as appellant was brought to trial within 243 days of his arrest for the charges that where originally brought in the first indictment.

### New Charges in the Second Indictment

{¶ 25} However, the new charges that were brought in the second indictment are a different story. Pursuant to *Baker*, a defendant cannot waive his rights to speedy trial prior to charges actually being brought against the defendant because that waiver would not be made knowingly. Therefore, any waivers that applied in case No. 2017 0036 cannot apply to the additional charges that were brought in case No. 2017 1116. However, tolling periods apply to the new charges as they would the original charges.

13.

{¶ 26} As we found above, the additional charges arise from the same facts and circumstances, or were known to the police at the time the original charges were brought. Therefore, the re-indictment of appellant did not extend the speedy trial time period for these additional charges. As such the time period began to run on the additional charges on the same day that appellant was originally arrested for the original charges. However, without the time waivers that appellant signed, the speedy trial time has run.

{¶ 27} Appellant was held in jail pending the charges from January 4, 2017 through March 10, 2017, when appellant filed a motion for a continuance. This was 66 days, but as appellant was in jail, these days are multiplied by three for a total of 198 days. The motion for continuance was granted on March 28, 2017, so the tolling time period for the motion was completed on that day. No other tolling events took place until May 22, 2017, when the motion for a firearm expert was filed by appellant, which accounted for 55 days of time. Two motions and a continuance sought by appellant tolled the time until September 26, 2017. From September 27, 2017, through November 5, 2017, no tolling events took place and accounted for additional 39 days. Time further ran from November 13, 2017, through November 20, 2017, accounting for an additional seven days. In total, in case No. 2017 0036, 299 days ran on the new charges of violating a protection order, involuntary manslaughter, and the attached firearm specifications. As for the other charges, only one day counted towards the speedy trial time in case No. 2017 1116, for a total of 300 days from the time appellant was arrested until he was

14.

brought to trial. The following chart demonstrates the amount of time that has counted towards the speedy trial time limit for the charges brought in the second indictment.

| Begin Date | End Date | Reason | Total Days |
|---|---|---|---|
| January 4, 2017 | March 28, 2017 | Jailed | 198 days |
| March 28, 2017 | May 22, 2017 | | 55 days |
| May 22. 2017 | June 8, 2017 | Motion | Tolled |
| July 12, 2017 | September 26, 2017 | Continuance/Motion | Tolled |
| September 27, 2017 | November 5, 2017 | | 39 days |
| November 6, 2017 | November 13, 2017 | Continuance | Tolled |
| November 13, 2017 | November 20, 2017 | | 7 days |
| Total for case No. 2017 0036: | | | 299 days |
| November 20, 2017 | November 21, 2017 | | 1 |
| November 21, 2017 | March 6, 2018 | Time waiver | Tolled |
| March 6, 2018 | April 6, 2018 | Time waiver | Tolled |
| April 6, 2018 | August 20, 2018 | Time waiver | Tolled |
| August 20, 2018 | September 25, 2018 | Time waiver | Tolled |
| September 25, 2018 | | Trial begins | |
| Total for case No. 2017 1116: | | | 1 |
| Total for both charges of violating a protection order, both charges of involuntary manslaughter, and the gun specifications charges: | | | 300 |

{¶ 28} Therefore, the two charges of violating protection order, two charges of involuntary slaughter, and the firearm specifications took longer than 270 days to bring to trial. As such, appellant's second assignment of error is well taken in regards to the additional charges brought in the second indictment. Appellant's convictions as they relate to these additional charges are vacated and the matter must be remanded to the trial court for further sentencing.

**Preindictment Delay**

{¶ 29} Appellant next argues that because the second indictment was filed eleven months after the first indictment, his due process rights were violated by that preindictment delay.

{¶ 30} "'[P]reindictment delay violates due process only when it is unjustifiable and causes actual prejudice * * *.'" *State v. Reynolds*, 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 37, quoting *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The test to determine whether a preindictment delay violates a defendant's due process rights is a two-step burden-shifting test.

> First, the defendant must present evidence of actual prejudice. If he does, the burden shifts to the state to produce evidence of justifiable reason for the delay; the reason for the state's delay is irrelevant if the defendant cannot establish actual prejudice. In reviewing the trial court's decision on a motion to dismiss for preindictment delay, we give deference to the trial court's findings of fact, but review the court's application of the law to the facts de novo. (Citations omitted). *Id*.

{¶ 31} "'Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense.'" *Id*. at ¶ 38, citing *Jones* at ¶ 28.

{¶ 32} In his motion, appellant argues that the delay from January 2017, to November 2017, caused him actual prejudice because his counsel at the time was forced

16.

to withdraw from representation and become a witness in the action relating to the charges of violating a protection order. However, appellant fails to state how a change in counsel minimized the impact of the state's evidence, bolstered the defense, or affected his defense in any manner. The need for new counsel to be appointed did extend appellant's case by some time. However, we cannot find that appellant suffered actual prejudice due to this delay in the filing of the second indictment, and therefore do not need to consider appellee's reasoning for the delay.

{¶ 33} We therefore find appellant's second assignment of error well taken in part and not well taken in part. We vacate appellant's convictions for involuntary manslaughter, both counts of violating a protection order, the specifications attached to these charges as well as the firearm specification attached to the reckless homicide count. The convictions relating to reckless homicide and cultivating marijuana are not reversed and appellant's assignment of error in regard to these convictions is not well taken.

### Crim.R. 29 Motion and Sufficiency of the Evidence

{¶ 34} By making a motion for acquittal under Crim.R. 29(A), a defendant challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. A court's denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

17.

{¶ 35} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Internal citations omitted). *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). When making such a determination, an appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 36} Appellant fails to point to elements of the charges he feels appellee failed to prove beyond a reasonable doubt. Appellee was required to demonstrate that appellant recklessly caused the death of another. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 37} Here, appellee presented evidence of the police officers who responded to the 911 call made by appellant. Officers testified that appellant was attempting to revive or assist the victim at the time the officers arrived on the scene and that his initial statement to the police stated that the victim accidentally shot himself. One of these

18.

officers recorded statements appellant made to officers on the scene that demonstrated that appellant admitted he had the firearm in his possession when the weapon discharged.

{¶ 38} Appellee also presented evidence in the form of photographs of the scene that demonstrated where the incident took place and what the scene looked like on that day. The coroner and forensic pathologist who reviewed the victim's body testified that the victim died of a bullet wound and presented reports and photographs of the wounds. Testimony of Albert Larochelle, an expert in the type of firearm appellant used the day in question, was presented to demonstrate that the weapon was in good working order and all of the safety features were properly functioning on the day the firearm injured the victim. Further evidence was presented that appellant was holding a loaded weapon without all of the safety features engaged and pointed that weapon at another person, thus demonstrating a heedless indifference to human life. Appellant admitted he was well versed in weapons and the dangers presented by the actions he took that night. Appellee therefore presented sufficient evidence that appellant recklessly caused the death of another.

{¶ 39} Following their response to the 911 call, police filed a warrant seeking a search of the home. During that search, the police found several marijuana plants that appellant was growing and taking care of. Therefore, there was sufficient evidence that appellant was cultivating and engaging in the production of a controlled substance.

{¶ 40} Accordingly, sufficient evidence, including appellant's own statements, was presented to the jury to determine appellant's guilt. We find that after viewing this

19.

evidence in a light most favorable to appellee, that a rational trier of fact could have found the essential elements of the crime had been proven beyond a reasonable doubt. Therefore, this portion of appellant's first assignment of error is not well-taken.

**Manifest Weight**

{¶ 41} "While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Crawford*, 6th Dist. Lucas No. L-17-1296, 2019-Ohio-3123, at ¶ 46, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The appellate court must sit as the "thirteenth juror" and scrutinize the factfinder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. When reviewing an appellant's claim that a verdict is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

{¶ 42} Based on the testimony and evidence presented at trial, we cannot find that the jury lost its way when it found appellant guilty on all counts. Appellee presented evidence of each crime which proved appellant's guilt beyond a reasonable doubt. Appellee presented evidence that on the day of the incident appellant was in possession of a firearm, that the firearm was under his control when it discharged, and that the gun

20.

shot the victim who would later die from his wounds. Therefore, this portion appellant's first assignment of error is also found not well-taken.

{¶ 43} As appellant's conviction was not against the sufficiency of the evidence or the manifest weight of the evidence, the entirety of appellant's first assignment of error is found not well-taken.

## Admission of Pictures

{¶ 44} Appellant next argues the admission of certain photographs was in error because their probative value did not outweigh the prejudicial effect on jurors. The disputed photographs were photographs taken during the autopsy of the victim and contained photographs of the deceased victim, his wounds, and a photograph of the victim's liver which suffered a bullet wound. Appellant's counsel objected at trial to the introduction of the photographs and the trial court limited the number of photographs appellee sought to introduce so that they would not be repetitive.

Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. To be certain, a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relevant probative value. However, the mere fact that a photograph is gruesome or horrendous is not sufficient to render it *per se* inadmissible. 'The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion

21.

and the defendant has been materially prejudiced thereby, this court should

be slow to interfere.'

(Citations omitted).  *State v. Maurer*, 15 Ohio St.3d 239, 264, 473 N.E.2d 768

(1984).

{¶ 45} Here, the trial court properly admitted the autopsy photographs because the

photographs assisted the jury in understanding the coroner and forensic pathologist's

testimony describing the manner of death.  The pictures were not repetitive and assisted

in demonstrating that the victim passed away due to a gunshot wound.  Further, the

pictures were not gruesome, graphic wounds, but rather were mere depictions of clean

wounds where the bullet entered and exited the victim's body.  Therefore, the probative

value was not substantially outweighed by the danger of unfair prejudice. Appellant's

third assignment of error not well-taken.

### Effective Assistance of Counsel

{¶ 46} The Supreme Court of the United States in *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of

Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), laid out a two-part

test to determine if a defendant was provided ineffective assistance of counsel.  First, a

defendant must demonstrate that the trial counsel's conduct fell below an objective

standard of reasonableness and that those errors were serious enough to create a

reasonable probability, that but for the errors, the result of the trial would have differed.

22.

*Bradley* at 142. Trial counsel is entitled to a strong presumption that his or her counsel did not fall below a reasonable standard. *Strickland* at 688.

{¶ 47} Appellant argues that his counsel's representation was ineffective because counsel failed to seek the appointment of a firearm expert at appellee's expense, failed to move the court sever the charges or seek discharge of the charges, and failed to introduce evidence requested by appellant.

{¶ 48} We first find that appellant's trial counsel was not deficient for failing to file a motion for a firearm expert because trial counsel did file such a motion in case No. CRI 2017 0036.

{¶ 49} Next, appellant's counsel was not deficient in failing to seek severance of the charges because the cultivation of marijuana charge is not so prejudicial that the charge was required to be severed, especially considering the other very serious charges appellant was charged with. Appellant's counsel did not fall below a reasonable standard in regards to seeking a discharge of appellant on the cultivation of marijuana charge because counsel filed a motion for dismissal on speedy trial grounds and filed a supplement to motion further arguing his position.

{¶ 50} Finally, appellant's counsel was not ineffective for failing to introduce evidence from the ex parte hearing because such a decision was a legitimate legal strategy to which this court will defer. *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 18, citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980)("Questionable trial strategies and tactics, however, do not rise to the

23.

level of ineffective assistance of counsel."). Appellant's fourth assignment of error is not well-taken.

## Civil Protection Order

{¶ 51} As we previously found that the charges for violating the protection orders violated appellant's speedy trial rights, we will not determine whether the trial court erred in failing to dismiss and in prohibiting appellant from presenting evidence that the protection order was not valid at the time of the incident. The court finds appellant's fifth assignment of error is moot.

## Conclusion

{¶ 52} We affirm in part and reverse in part the judgment of the Huron County Court of Common Pleas. Appellant's conviction for involuntary manslaughter, both convictions for counts of violating a protection order, the attached firearm specifications, and the firearm specification attached to the reckless homicide charge are reversed. The matter is remanded to the Huron County Court of Common Pleas for proceedings consistent with this opinion. All other aspects of the judgment of the Huron County Court of Common Pleas is affirmed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                               _____
                                                          JUDGE

Christine E. Mayle, J.


Gene A. Zmuda, P.J.                       _____
CONCUR.                                                  JUDGE


                                                       _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.