[Cite as *State v. George*, 2016-Ohio-7886.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103708**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT GEORGE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589369-A

**BEFORE:**    McCormack, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**    November 23, 2016

**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
75 Public Square
Suite 1325
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mahmoud S. Awadallah
Marc Bullard
Diane Smilanick
Margaret Troia
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Robert George ("appellant" hereafter) appeals from a judgment of the trial court that, after a jury trial, convicted him of the aggravated murder of Brian Montgomery and several additional offenses. Having carefully reviewed the record and applicable law, we affirm his convictions.

{¶2} On August 17, 2014, 21-year-old Brandon Montgomery was out with his father Brian Montgomery driving around in his father's black Charger. Brandon was at the time on a 48-hour pass from a halfway house to which he had been assigned. While "cruising" in the vehicle, Brandon decided to stop at the Superior Food Mart on Superior Avenue to buy some cigarettes. He drove around the store "showing off" the Charger before pulling into the store's parking lot. Not long after that, his father was shot to death in the store's parking lot.

{¶3} The state charged appellant and Mitchell Taylor with the aggravated murder of Brian Montgomery and several additional offenses. No physical evidence linked appellant and his codefendant to the crime. The police, however, were aided by surveillance videos in their investigation.

{¶4} On the surveillance footage, two individuals, which the state alleged to be appellant and Mitchell Taylor, were seen inside the Superior Food Mart shortly before the shooting. They were then seen on video leaving the store and walking away from the store down a city sidewalk, when the Montgomerys' Charger pulled into the store's

parking lot. Brandon Montgomery went inside the food mart while his father waited in the vehicle. His father then got out of the vehicle to retrieve something from the driver's side of the vehicle. Appellant and Taylor were then seen on the surveillance video walking back to the store's parking lot, and just as Brandon exited the store to return to the vehicle, appellant and Taylor opened fire at Brandon and Brian Montgomery. Brandon took off running and was shot in the leg. His father stumbled and collapsed to the pavement. The motive behind the shooting remained unknown.

{¶5} Appellant and Mitchell Taylor were each charged with aggravated murder, murder, four counts of felonious assault, one count of attempted aggravated murder and one count of discharge of firearm on or near prohibited premises. Each of these counts carried a one- and-three-year firearm specification. Taylor subsequently pleaded guilty to all counts.

{¶6} Appellant opted for a jury trial. The state presented 22 witnesses to testify on its behalf. After the lengthy trial, the jury found appellant guilty of all counts. Appellant was sentenced to life with the possibility of parole after 36 years.

{¶7} On appeal, appellant raises four assignments of error. They state:

1. The trial court erred by denying appellant's Rule 29 Motions for acquittal because the state did not produce sufficient evidence to prove the elements of the charged offenses.

2. The verdict was against the manifest weight of the evidence.

3. The state's closing arguments contained statements that went beyond the record, advanced false assertions of law, and contained other impermissible comments, which constituted prosecutorial misconduct.

4. The court abused its discretion when it qualified Tom Ciula as an "expert" witness in the area of "video/audio analysis."

For ease of discussion, we address the fourth assignment of error first.

**Video Expert**

{¶8} Although Brandon Montgomery survived the shooting, he did not identify either shooter. There were no other eyewitnesses to the shooting. However, the surveillance videos gathered from different cameras in the vicinity of the scene of the shooting captured the shooting as well as the two suspects' movements inside the food mart moments before the shooting. At trial, the state's expert, Tom Ciula, testified as to how he collected, analyzed, synced, and clarified the surveillance footage from the multiple cameras.

{¶9} Under the fourth assignment of error, appellant claims the trial court abused its discretion when it permitted Tom Ciula to be qualified as an expert witness in the area of video analysis.

{¶10} "Determinations of expert witness qualifications to testify are within the discretion of the trial court." *State v. Awkal*, 76 Ohio St.3d 324, 331, 667 N.E.2d 960 (1996). "An 'expert' witness is allowed to testify to matters beyond the knowledge or experience possessed by lay persons if the witness has specialized knowledge or skill and the witness' testimony is based on reliable scientific, technical, or other specialized information." *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 9 (8th Dist.), citing Evid.R. 702. A witness may be qualified as an expert

witness if it is established that the witness has "knowledge of scientific, technical, or other such specialized nature" *State v. Monroe*, 8th Dist. Cuyahoga No. 94768, 2011-Ohio-3045, ¶ 51, citing Evid.R. 702.

{¶11} Tom Ciula, a forensic video specialist at the Bureau of Special Investigations in Cleveland's police department, testified that his job consists of collecting, analyzing, authenticating, and preparing videos for courtroom presentations in criminal matters. He is certified by the Law Enforcement and Emergency Services Video Association as a video technician. He is also an instructor on forensic video for the Ohio Identifications Officers Association. He has testified on numerous occasions as an expert in the courtrooms in Cuyahoga County.

{¶12} After Ciula testified to his extensive training and experience, the trial court qualified him as an expert on video and audio analysis, with no objection from the defense.

{¶13} Ciula testified that, for courtroom presentation purposes, he would sometimes create a "sequence" video from footage retrieved from multiple cameras to enable a viewer to follow a person of interest from camera to camera through a time line, and to make sense of what is being captured on the various cameras. Ciula testified that he employed a certain algorithm — called a "hashing" process — to ensure that a video that is being enhanced or clarified for courtroom-presentation purposes is free of any tampering or alteration.

{¶14} In the instant case, Ciula personally collected and analyzed the surveillance videos from five different cameras at the Superior Food Mart. He also analyzed the video footage gathered from the cameras installed at a VA hospital across the street from the food mart.

{¶15} Ciula testified as to how he combined and "synced" the time-stamped videos from Superior Food Mart's cameras. He explained to the jury how he sequenced the various videos so that a viewer can follow the two suspects from the time they left the store and walked down a city sidewalk to the moment when the two walked back toward the parking lot and opened fire at the two victims. As the video capturing the shooting was shown to the jury, Ciula noted the movements of the two suspects: the suspect in a cap and shorts moved toward the store's own sidewalk and fired from there; the suspect in a red sweatshirt and jeans stayed on the city sidewalk and fired from there. Ciula had also reviewed the surveillance videos from the cameras located at the VA hospital. One camera captured the two suspects leaving the store, walking down the city sidewalk, and then turning around and walking back to the store's parking lot; another captured the shooting incident itself. These videos were shown to the jury as well.

{¶16} Ciula's testimony established that he has specialized knowledge and skills of a technical nature beyond the knowledge and experience possessed by lay persons. As such, the trial court did not abuse its discretion in permitting Ciula to be qualified as an expert and to testify as to how he analyzed the surveillance videos and prepared the videos to be viewed by the jury at trial. Ciula, appropriately, never identified the two

suspects seen in the videos but only aided the jury in following the two suspects' movements as captured in various surveillance videos; it was the jury as the trier of fact who ultimately decided whether appellant was one of the two shooters seen in the video.

{¶17} Although appellant challenges on appeal Ciula's qualifications and testimony as an expert, the record reflects that the defense counsel never raised an objection at trial. We find no error, plain or otherwise. The fourth assignment of error lacks merit.

**Sufficiency and Manifest Weight of the Evidence**

{¶18} Next, we address jointly the first and second assignments of error. Appellant claims the evidence presented at trial was insufficient to support his convictions and his convictions were against the manifest weight of the evidence.

{¶19} When considering a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶20}** Appellant specifically claims the state presented insufficient evidence to prove he was one of the two shooters, or to prove the murder of Brian Montgomery was committed with prior calculation and design. He also claims the jury's finding of prior calculation and design was against the manifest weight of the evidence. As we explain in the following, these claims lack merit.

**1. Identity Evidence**

**{¶21}** The state's main evidence linking appellant to the shooting was the surveillance videos from multiple cameras located near the scene of the shooting. The videos showed two men arriving in the parking lot of Superior Food Mart and going inside. They were later seen exiting the store and walking away from the store, down a city sidewalk. Just as they walked away, the Montgomerys' black Charger pulled into the parking lot. Brandon went inside the store. His father Brian first waited in the car but then got out of the passenger side of the vehicle. The two men were then seen on the surveillance footage walking back to the parking lot on the sidewalk, and when Brandon came out of the store, the two men immediately fired multiple shots at Brandon and his father.

**{¶22}** While the two men's faces were not clearly recognizable in the surveillance footage that captured the shooting in the parking lot, the surveillance videos from the cameras inside the store clearly revealed the two men's faces, as well as their clothing. One of them was in a red sweatshirt and jeans and wearing a distinct hair style, with a bun on top of his head; the other was in shorts and wore a cap.

{¶23} Because Brandon Montgomery did not identify the shooters and there were no other eyewitnesses to the shooting, the police released to the public the footage from the store's surveillance cameras and also still photographs from the footage, in an attempt to identify the two suspects. Several individuals, including appellant's mother, recognized appellant from the video, as did several police officers who had prior encounters with appellant.

{¶24} At trial, seven witnesses, including appellant's mother, testified that they recognized appellant from the images released to the public. One of the witnesses was Larry Weathersby, a juvenile who grew up with both appellant and codefendant Mitchell Taylor. Weathersby acknowledged that he had pleaded guilty to participation in a criminal gang and drug trafficking in an unrelated case, and had agreed to testify about the gang and also to identify appellant in the instant case, in exchange for not being bound over to the adult court. Joshua Gayle, also a juvenile who knew both appellant and Mitchell Taylor, testified that he recognized the two from the media release. He testified that "Bobby," referring to appellant Robert George, was the one wearing a red "hoodie." Gayle similarly acknowledged that he testified against appellant as part of a plea agreement in the juvenile court in an unrelated case.

{¶25} Appellant's own mother testified that she recognized her son from the video and photos released to the public. In addition, six police officers, two of them in the city's Gang Impact Unit, who had interacted with appellant on previous occasions

unrelated to this case, testified they recognized appellant from the images released to the public.

{¶26} Although there were no eyewitness to the shooting who were able to identify appellant, multiple surveillance cameras from different locations and angles captured the movements of the two codefendants before and during the shooting. Several witnesses, including appellant's mother, recognized one of the two suspects to be appellant. Thus, the state presented sufficient identity evidence to prove that appellant was one of the two suspects involved in the shooting death of Brian Montgomery.

**2. Prior Calculation and Design**

{¶27} Appellant claims the state did not produce sufficient evidence to prove prior calculation and design, a necessary element for the offense of aggravated murder as defined in R.C. 2903.01(A)(1). He, in addition, claims the jury's finding of prior calculation and design was against the manifest weight of the evidence.

{¶28} R.C. 2903.01(A)(1) defines aggravated murder as purposely causing the death of another and with prior calculation and design. Prior calculation and design, as the jury was correctly instructed in this case, has been defined as: "'the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and the means and/or instrument with which to cause the death of another.'" *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶

13, quoting *State v. Coley*, 93 Ohio St.3d 253, 267, 754 N.E.2d 1129 (2001), citing 4 *Ohio Jury Instructions*, Section 503.01 (1997 and Supp.2000).

{¶29} As the jury in the instant case was also properly instructed, "[t]he circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration need be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause death is not sufficient." *State v. Campbell*, 90 Ohio St.3d 320, 341, 738 N.E.2d 1178 (2000) (approving of the trial court's jury instruction on prior calculation and design).

{¶30} Furthermore, there is no bright-line test that distinguishes between the presence or absence of prior calculation and design; instead, each case turns on the particular facts and evidence presented at trial. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148, citing *State v. Taylor*, 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997). *See also State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, ¶ 41; *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 77.

> [W]hen the evidence presented at trial "reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

*Maxwell* at ¶ 148, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph three of the syllabus.

**{¶31}** Under the case law authority, the element of "prior calculation and design" from the circumstances surrounding a murder can be proven in several ways, including:

> (1) "evidence of a preconceived plan leading up to the murder"; (2) "evidence of the [defendant's] encounter with the victim, including evidence necessary to infer that the defendant had a preconceived notion to kill regardless of how the [events] unfolded" or (3) "evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill," such as where the victim is killed in a cold-blooded, execution-style manner.

*Hicks* at ¶ 40, quoting *Orr* at ¶ 75. "[I]f the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design." *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010-Ohio-2770, ¶ 19.

**{¶32}** In this case, appellant and codefendant Mitchell Taylor were seen in the surveillance video leaving the store's parking lot just as Brandon Montgomery and his father Brian pulled into the parking lot. Appellant and Mitchell then returned to the parking lot and, as the video footage shows, fired shots at Brandon and Brian Montgomery when Brandon exited the store. Although there was a short elapse of time between appellant's earlier passing by the victims and the shooting, the short period of time in itself does not preclude a finding of prior calculation and design. *Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, at ¶ 17, citing *Taylor* at 19. The two codefendants returning to the parking lot to then rapidly fire shots at the Montgomerys

moments after the initial sighting in a horrifyingly and strikingly cold-blooded manner was sufficient circumstantial evidence to permit the jury to reasonably infer prior calculation and design. *Hicks* at ¶ 40; *Hough* at ¶ 19. Reviewing the evidence in a light most favorable to the prosecution, we find that the evidence presented at trial sufficiently supports the jury's determination of prior calculation and design.

{¶33} Appellant also claims the manifest weight of the evidence was against a finding of prior design and calculation. While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. Unlike challenges to the sufficiency of the evidence, which raise a question of law, manifest weight challenges raise factual issues. When a defendant asserts that his conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In evaluating a manifest-weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶34} For whatever reason, after seeing the father and son in the black Charger, appellant and his codefendant, two fully armed marauders with their body cavities full to the brim with lethal venom, quickly developed their scheme to rain terror and devastation on their designated victims. As captured in the surveillance footage, they returned to the parking lot and positioned themselves geometrically on respective sidewalks so as to maximize the opportunity to kill. Without pause, without notice, without warning to the unsuspecting victims, the shooters commenced the firing of handguns at father and son, killing Brian Montgomery in that convenience store parking lot just feet away from his 21-year-old son. Having reviewed the entire record and having weighed the evidence and all reasonable inferences, we conclude the jury neither lost its way nor created such a manifest miscarriage of justice in finding appellant guilty of aggravated murder, that murder being with prior calculation and design. The first and second assignments of error both lack merit.

**Prosecutor's Closing Argument**

{¶35} Under the third assignment of error, appellant argues the prosecutor committed prosecutorial misconduct at closing argument by making improper comments.

Specifically, appellant objects to the prosecutor's comment that appellant and his codefendant made a plan to kill the Montgomerys, both father and son.

{¶36} "'In the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). However, a prosecutor has a duty in closing argument to avoid efforts to obtain a conviction by going beyond the evidence before the jury. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). "Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Lott* at 166.

{¶37} Here, appellant challenges the following statement by the prosecutor at the state's final argument:

> Two guys * * * left that store, walked into the corner, came back and committed the killing. They planned that killing when they walked to the corner, and on the way back, they decided to execute that plan that they came up with. There is no argument about that.
>
> [T]he decision they are asking you to make is whether or not Robert George was one of those individuals. *You don't have a question of whether or not there was an aggravated murder.* * * *
>
> The question is, is it Robert George? The real question is, is it Robert George?

(Emphasis added.)

{¶38} Appellant claims that the prosecutor's remark misled the jury into a belief that the state need not prove the essential element of prior calculation and design for a conviction of aggravated murder.

{¶39} We disagree. The jury was aware the prosecutor's remark was made in the context of an *argument.* As such, the prosecutor was free to address "what the evidence has shown and what reasonable inferences may be drawn" from the evidence. The remark that "[y]ou don't have a question of whether or not there was an aggravated murder," viewed in context, was a rhetorical flush the prosecutor was entitled to based on the evidence before the jury, not a statement calculated to mislead the jury regarding the elements necessary to prove aggravated murder.

{¶40} Appellant also contends the prosecutor improperly remarked at closing argument that appellant's mother "identified her son as the killer." This observation was, similarly, based on the testimony before the jury — his mother answered affirmatively in response to the prosecutor's questions "[n]ow, you say that you recognize that individual [from the store surveillance video] as your son; is that correct?" and "are you sure that that person in State's Exhibit 190 [still photo from the store's surveillance video] and up there on that TV screen is your son?" Contrary to appellant's contention, the prosecutor did not improperly characterize the testimony of the witness. The third assignment of error is without merit.

{¶41} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR