[Cite as *State v. Yates*, 2022-Ohio-76.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109821 |
| v. | : | |
| ERIC YATES, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 13, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636403-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Nora Bryan, and Sean Kilbane, Assistant Prosecuting Attorneys, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

ANITA LASTER MAYS, J.:

## I.  Background and Facts

{¶ 1}   Defendant-appellant Eric Yates ("Yates") appeals his jury convictions for multiple charges arising from the murder of adult male victim Sherell Mattis ("Mattis") and the assault of a police officer.  We affirm.

{¶ 2} Yates was indicted on the following twelve counts:

Count 1, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A) with one-year, three-year, and fifty-four month firearm specifications;

Count 2, murder, an unclassified felony, in violation of R.C. 2903.02(B) with one-year, three-year, and fifty-four month firearm specifications;

Count 3, felonious assault, a felony of the second-degree, in violation of R.C. 2903.11(A)(1) with one-year, three-year, and fifty-four month firearm specifications, a notice of prior conviction, and a repeat violent offender specification;

Count 4, attempted murder, a felony of the first-degree, in violation of R.C. 2903.02(A)/2923.02 with one-year, three-year, and fifty-four month firearm specifications, a notice of prior conviction, and a repeat violent offender specification;

Count 5, felonious assault, a felony of the second-degree, in violation of R.C. 2903.11(A)(2) with one-year, three-year, and fifty-four month firearm specifications, a notice of prior conviction, and a repeat violent offender specification;

Count 6, discharge of firearm on prohibited premises, a felony of the first-degree, in violation of R.C. 2923.162(A)(3) with one-year, three-year, and fifty-four month firearm specifications;

Counts 7, 8, and 9 were each counts of felonious assault, felonies of the second-degree, in violation of R.C. 2903.11(A)(2), each with one-year, three-year, and fifty-four month firearm specifications, a notice of prior conviction, and a repeat violent offender specification;

Count 10, assault, a felony of the fourth-degree, in violation of R.C. 2903.13(A);

Count 11, having weapons while under disability, a felony of the third-degree, in violation of R.C. 2923.13(A)(2); and

Count 12, having weapons while under disability, a felony of the third-degree, in violation of R.C. 2923.13(A)(3).

{¶ 3} On the afternoon of January 10, 2019, then 27-year-old Mattis and his 14-year-old male cousin D.W. were standing outside of the Glenville Grocery

store and gas station located at the intersection of East 105 Street and Somerset Avenue in Cleveland, Ohio. The establishment was usually busy with customers and individuals hanging around outside of the store. D.W. was selling marijuana as he did several times a week.

{¶ 4} Yates formerly lived next door to Mattis and D.W. for several years and knew them and their families well. According to witnesses and surveillance videos, Yates arrived at the store about 5:00 p.m., made a purchase, and departed about 15 minutes later without interaction with Mattis and D.W. Yates returned shortly thereafter in a white GMC Yukon SUV accompanied by his wife.

{¶ 5} A conversation between Yates, D.W., and Mattis escalated into an argument based on Yates's belief that D.W. owed him money. Yates departed about thirteen minutes later, D.W. went to the side of the building to use the restroom, and heard shots. D.W. testified that he looked for Mattis inside the store, checked outside, and located Mattis on the other side of the parking lot. Mattis was holding his cell phone, and D.W. saw that he had attempted to call 911. D.W. redialed 911 to report the shooting.

{¶ 6} Yates allegedly drove past the area as EMS and police arrived and yelled to D.W., "ya'll have people shooting at me." (Tr. 285.) Mattis was transported to University Hospitals but died after surgery. The cause of death was listed as a gunshot wound to the hip.

{¶ 7} Based on evidence obtained from witnesses and surveillance videos, police identified Yates as a person of interest. Yates contacted Cleveland Police

Officer Delonzo Goshen ("Officer Goshen"), a former acquaintance, via social media and asked Officer Goshen to serve as a liaison for Yates to make a statement. On January 13, 2019, Yates met with Officer Goshen and Homicide Sergeant Aaron Reese ("Sergeant Reese"). Yates admitted that he was present at the store on the day of the shooting, that he interacted with D.W. and Mattis that day, and that he sells marijuana. During the meeting, Yates became agitated and threw hot coffee at Sergeant Reese. He was arrested and charged with assaulting a peace officer and the counts herein.

{¶ 8} On January 28, 2019, Yates pleaded not guilty, defense counsel was assigned, and a $2 million bond set. Original counsel withdrew and new counsel was assigned. Prior to commencement of the jury trial on March 10, 2020, the state moved to dismiss Count 6, discharge of a firearm over prohibited premises and Count 12, having a weapon while under disability. Count 11, having a weapon while under disability and the 54-month firearm specifications were tried to the bench.

{¶ 9} The counts were subsequently renumbered. Three of the felonious assault counts cited as victims H.B., L.K., and Y.A.M. Bystander H.B. was sitting in her automobile at the time of the shooting. Her car was damaged, but she was not injured. Store employees L.K. and Y.A.M. who were inside of the building were also named as victims in the indictments.

{¶ 10} At the close of the state's case, Yates's Crim.R. 29 motion was denied. The defense rested upon the submission of one exhibit, and the trial court denied the renewed Crim.R. 29 motion.

{¶ 11} On March 16, 2020, Yates was convicted of all counts except for renumbered Counts 7 and 8 for felonious assault of the store employees. He was also found guilty of the 54-month firearm specifications and having a weapon while under disability. On June 18, 2020, Counts 1, 2, and 3 merged, and the state elected to proceed on Count 1, aggravated murder, R.C. 2903.01(A). Counts 4 and 5 merged, and the state proceeded on Count 4 attempted murder.

{¶ 12} On June 18, 2020, Yates was sentenced to a total of 53 years with parole eligibility after 30 years with 523 days of jail-time credit. On June 23, 2020, Yates was resentenced on Counts 4 and 10.

> On a former day the jury returned verdicts on nine counts and the court returned a guilty verdict on Count 11 as well as several firearm specifications, repeat violent offender specifications and notice of prior conviction specifications. The defendant waived his right to a jury trial on all the above. The state of Ohio dismissed Counts 6 and 12 prior to trial. The verdict forms reflect that the counts were renumbered beginning with Count 6 (Count 7 in the indictment). Due to some confusion the court scheduled a supplemental sentencing hearing. Upon hearing from the defendant and his counsel and from the state of Ohio, the court issued a renewed sentence on Count 4 and Count 10. Counts are to run concurrent to one another and concurrent to Count 1 as opposed to consecutive, reducing defendant's sentence to life with parole eligibility after 39 years, which was life in prison with parole eligibility after 30 years consecutive to 54-month gun specifications on Count 1 and Count 4. Gun specifications run consecutive to each other and consecutive to Count 1. Defendant's sentence is — life with parole eligibility after 39 years. Defendant to receive 528 days jail credit as of [June 23, 2020].

Journal entry No. 113821553, p. 1 (July 9, 2020).

{¶ 13} On October 20, 2020, the trial court issued a nunc pro tunc entry to "reflect Count 10: 18 months in prison, (not 36 months as previously journalized.)"

The jail-time credit is listed as "523" days and the "total sentence is 53 years." Journal entry No. 114834548, p. 1 (Oct. 21, 2020).

{¶ 14} Yates appeals.

## II. Assignments of Error

{¶ 15} Yates assigns the following errors:

I.     Appellant's convictions were unsupported by sufficient evidence.

II.     Appellant's convictions were against the manifest weight of the evidence.

III.     The trial court erred by permitting the introduction of inadmissible hearsay evidence.

IV.     Irregularities in the jury process deprived appellant of a fair trial.

V.     Appellant's counsel was ineffective.

## III. Discussion

### A. Sufficiency of the Evidence

{¶ 16} The question of whether the evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court does not weigh the evidence but determines "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 17} Yates argues that the evidence is insufficient to show that Yates was the shooter. Yates argues there is no physical evidence, no eyewitnesses, and no specific identification of Yates as the shooter by the forensic video expert. Yates adds that the video testimony is not reliable because it was dark outside at the time.

{¶ 18} It is undisputed that D.W., Yates, and Mattis, who is also known as "Rell," were well-acquainted. D.W. said that Yates has been "close to [his] family" and that he has known him his "whole life." D.W. testified about the events that transpired at the gas station, the argument with Yates, and described Yates's attire at the gas station. D.W. also testified to portions of the video evidence.

{¶ 19} The videos show Yates had pulled into the gas station and exited the white Yukon at 5:34 p.m. Yates was wearing what appeared to be a white shirt tail extending from the rear of Yates's black hoodie, but upon closer inspection it was a strip of underwear observable due to the sagging back waistband of the pants. The videos captured the argument between Yates, D.W., and Mattis, and at 5:40 p.m., Yates had entered the Yukon, had exited the gas station, and as D.W. testified, turned left onto Somerset Avenue. D.W. and witnesses corroborated Yates's attire.

{¶ 20} The video expert explained that the video evidence gleaned from multiple cameras reflects that the shooter was wearing a "dark top with a white logo, dark pants with a white logo, dark shoes, and a skullie [knit cap] with a gray band." (Tr. 418.) "Those logos are lighter color and appear on the left-hand side of the top and also the left leg of the pants. They appear to be the Nike logo." *Id.* "At the back of his shoes, at the very back and to the sides, there is a lighter, a white area that can

be seen on those shoes." (Tr. 419.) "[A]t the top on his jacket, on the left side is the white logo I was describing. On his pants is also the white logo that is seen there." *Id.* The expert also explained the video portions that depict Yates's turn onto Somerset Avenue when he initially departed the gas station and that the shooter emerges from the woods from the direction of Somerset Avenue in "roughly two minutes." (Tr. 420.)

{¶ 21} This court's review of the videos reveals Yates had departed the parking lot and had turned down Somerset Avenue after arguing with D.W. and Mattis. Shortly thereafter, an individual dressed in the clothing described as being worn by Yates emerged from the woods behind the station from the direction of Somerset Avenue. The shooter emerged from the woods, raised his left hand, fired several shots, placed the gun in his left pocket, and exited towards Somerset Avenue. According to the record Yates is left-handed.

{¶ 22} Witness H.B. drove into the gas station at the time of the shooting. H.B.'s car had been hit by gunfire, but she was not injured. H.B. described the gunman and confirmed that he emerged from the woods. Police located shell casings in the area.

{¶ 23} Thus, there is witness testimony, video, and physical evidence such as the bullet casings in the area where the shooter was observed standing when firing. Although there were no eyewitnesses who were able to identify Yates as the shooter, "multiple surveillance cameras from different locations and angles captured" Yates's movements. *State v. George*, 8th Dist. Cuyahoga No. 103708, 2016-Ohio-7886,

¶ 26. The video expert testified that numerous identifying elements of the videos were consistent with the testimony that Yates was the shooter.

{¶ 24} We also add regarding the asserted lack of direct evidence that

> [u]nlike direct evidence in which a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish, circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence.

*State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13.

{¶ 25} "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37. The differences between circumstantial and direct evidence are irrelevant to the probative value because each carries the same weight. *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). "The Ohio Supreme Court has 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, citing *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶ 26} Viewed in a light most favorable to the prosecution, we find that the evidence was sufficient to support the convictions in this case as a matter of law. The first assigned error is overruled.

### B. Manifest Weight of the Evidence

{¶ 27} Yates also claims that his conviction is against the manifest weight of the evidence. "A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial." *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

{¶ 28} We sit "as a 'thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

> In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

*Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 81.

{¶ 29} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. An appellate court may not substitute its view for that of the jury unless it finds that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25; *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-

Ohio-2037. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Scott*, 8th Dist. Cuyahoga Nos. 106451 and 106474, 2018-Ohio-3791, ¶ 20, quoting *Wilson* at ¶ 24.

{¶ 30} The evidence cited in our analysis of sufficiency also upholds a finding that the verdict is not against the manifest weight of the evidence. The video evidence, witness testimony, and physical evidence support the jury's verdict in this case. We do not find this to be the "'exceptional case in which the evidence weighs heavily against conviction.'" *Thompkins* 387, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 31} The second assignment of error also fails.

**C. Hearsay Evidence**

{¶ 32} Yates offers that the trial court allowed inadmissible hearsay testimony by Mattis's mother who testified that D.W. called her the night of the shooting and said that "E shot 'Rell." (Tr. 229.) The state counters that the statement is admissible as an excited utterance and a present sense impression exception to the hearsay rule. We agree.

{¶ 33} The objection was not posed on direct examination. Thus, we review for plain error, and Yates must show that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 34} "Evid.R. 801(C) defines 'hearsay' as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Thomas*, 8th Dist. Cuyahoga No. 106194, 2018-Ohio-2841, ¶ 27, quoting Evid.R. 801(C). "Evid.R. 802 generally deems hearsay inadmissible unless the evidence falls under a specific exception to the hearsay prohibition. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87." *Id.*

{¶ 35} D.W.'s statement qualifies as hearsay under the rule. Thus, we examine the proffered exceptions. "An excited utterance is a 'statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' Evid.R. 803(2)." *State v. Bunch*, 8th Dist. Cuyahoga No. 92863, 2010-Ohio-515, ¶ 15. "A present sense impression is a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.' Evid.R. 803(1)." *Id.*

{¶ 36} We have previously recognized:

> Ohio case law shows that, often, statements made by victims of crimes may be introduced as present sense impressions or excited utterances if they were made while the victim "was in fear and under the stress of a startling event * * * and were not the product of reflective thought." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶94. *See also State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173.

> Evid.R. 803(1) and (2) also contemplate that statements made by witnesses who personally observe startling events may be admissible

even though they are introduced as hearsay. *See, e.g.*, *State v. Smith*, 80 Ohio St.3d 89, 107-08, 684 N.E.2d 668 (1997).

*Bunch* at ¶ 17-18.

{¶ 37} D.W. testified that he found Mattis laying by a pole. "[H]e was like on the phone with the police, but he wasn't saying nothing." (Tr. 283.) "He was trying to [speak], but he couldn't really get his words out." (Tr. 284.) D.W. called 911, Mattis's mother who was also D.W.'s aunt, and he called the mother of Mattis's child.

{¶ 38} Mattis's mother testified that she was watching television when D.W. called her and said "We [are] on 105. He said, E shot 'Rell." (Tr. 229.)

> Witness: He was like nervous and trying to get 'Rell — like he said 'Rell was in his arms and 'Rell was — eyes was going in the back of his head.
>
> State: And that's being described to you by [D.W.]?
>
> Witness: Yes.
>
> And then I said — [D.W.] tell 'Rell don't leave me. And then I said, "Tell him I love him," and then the phone went dead.

(Tr. 229-230.)

{¶ 39} We find that the state's argument has merit and the cited exceptions apply in this case. The third assigned error is overruled.

### D. Irregularities in the jury process

{¶ 40} Yates's fourth assigned error complains of irregularities in the jury process. Yates states that the parties learned during voir dire that a prospective juror was personally acquainted with the judge and that they participate in civic

organizations and hold fundraisers to raise money for children's organizations. The trial court inquired:

Court: Okay. And we have a meeting Wednesday night, right?

Juror: Yes.

Court: And on Sunday?

Juror: Yes.

Court: Most of the time when we see each other, it's a clam bake, work around the cabin, right?

Juror: Yes.

Court: We don't discuss law, do we?

Juror: No.

Court: I don't think I've ever discussed law at any of the meetings.

Juror: No. For quite some time, I didn't realize what your profession was, years ago, a long time.

Court: Have I — is there anything about knowing me that would affect your answer to any questions that you are called upon the decide with your follow jurors?

Juror: No.

(Tr. 132-133.) During questions by the state and defense, the juror confirmed that the juror would not be swayed by the acquaintance or the fact that the juror's brother served as a police officer. The state and defense passed for cause.

{¶ 41} On March 16, 2020, before the jury instructions were given, the bailiff delivered a letter to the trial court authored by the juror. The trial court read the letter for the record. The juror asked to be dismissed due to work and family obligations. "I know from my past [jury] service that this morning you will dismiss

the alternates.  Can you let someone else get an opportunity to deliberate and I will take their spot and get dismissed?"  (Tr. 696.)  The letter alludes to the children being home from school and the grandparents' unavailability as caretakers because the world "being turned upside down" as a result of Covid-19.  *Id.*

{¶ 42} The state argued that the juror should remain.  The defense supported dismissal and expressed concern that the juror "may rush to get a verdict and not take his time and give the Defendant the type of deliberation he's entitled to." (Tr. 698.)  The trial court decided that the juror should remain.  "I am not going to excuse him.  Like you said, the other 11 jurors are all in the same spot he is in terms of it being a difficult time for all of us." (Tr. 700.)  The trial court stated that it would consider how to inform the juror the request has been denied.  The proceedings continued, and jury deliberations ensued without further inquiry.

{¶ 43} Yates also cites a discussion on the record conducted March 12, 2020, to support the pandemic concerns.  At that time the trial court informed the jury that the trial would continue, and the courts would remain open unless the trial court received contrary directions.

{¶ 44} The case was submitted to the jury at approximately 2:27 p.m., the jury had requested to view the videos at 4:02 p.m., and delivered a verdict at 7:35 p.m.  As Yates points out, the jury heard 15 witnesses and viewed a number of exhibits including the videos.

{¶ 45} Yates is correct that "[t]he length of jury deliberations is generally not relevant, and a verdict is presumed valid." *McGugan v. Olszewski*, 8th Dist.

Cuyahoga No. 109099, 2020-Ohio-4992, ¶ 13, citing *D.E. Barnes, Inc. v. Schwemlein*, 4th Dist. Ross No. 872, 1982 Ohio App. LEXIS 14077 (June 9, 1982). Yates has not demonstrated that he was prejudiced.

{¶ 46} The fourth assigned error lacks merit.

## E. Ineffective assistance of counsel

{¶ 47} To substantiate a claim of ineffective assistance of counsel, Yates must show that counsel's performance was so deficient that he was prejudiced and denied a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Yates must also show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 57 (8th Dist.), citing *Strickland*.

> Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The defendant must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). We consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶ 48} Yates states that counsel was ineffective for failing to: "(1) move for a dismissal because of a violation of [Yates's] speedy trial rights; (2) object to the hearsay testimony as described in the third assigned error; and 3) readdress the issue with the juror argued in the fourth assigned error."

{¶ 49} We have already determined that Yates's claims under assigned errors three and four lack merit and thus do not constitute error. "[W]here it is found that the trial court did not err, cumulative error is simply inapplicable." *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 66. Thus, we address the speedy trial issue.

{¶ 50} Yates claims that his trial counsel was ineffective because counsel failed to file a motion to dismiss for want of speedy trial.

> Generally, the failure to raise the violation of speedy trial rights in the trial court constitutes a waiver of the defense on appeal. However, a defendant may raise a speedy trial claim in the context of a claim of ineffective assistance of counsel. *Cleveland v. White*, 8th Dist. Cuyahoga No. 99375, 2013-Ohio-5423, ¶ 7. And in order to demonstrate that counsel provided ineffective assistance of counsel by failing to file a motion to dismiss for speedy trial violations, the defendant must show that the motion would have been successful and the case would likely have been dismissed. *Id.* "Counsel cannot be [ineffective] for failing to file a fruitless motion." *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 8.

*State v. Mango*, 8th Dist. Cuyahoga No. 103146, 2016-Ohio-2935, ¶ 18.

{¶ 51} Under Ohio's speedy trial statutes, a trial court shall discharge a defendant if the trial court and prosecution fail to bring the defendant to trial within the time required by R.C. 2945.71 and 2945.72. *See* R.C. 2945.73(B).

{¶ 52} The Ohio Supreme Court has "imposed upon the prosecution and the trial courts the mandatory duty of complying with the speedy trial statutes." *State v. Singer*, 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977). Thus, courts must strictly construe the speedy trial statutes against the state. *Brecksville v. Cook*, 75 Ohio

St.3d 53, 57, 661 N.E.2d 706 (1996), citing *State v. Madden*, 10th Dist. Franklin No. 04AP-1228, 2005-Ohio-4281, ¶ 25.

{¶ 53} Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Howard*, 79 Ohio App.3d 705, 707, 607 N.E.2d 1121 (8th Dist.1992). At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *State v. Geraldo*, 13 Ohio App.3d 27, 28, 468 N.E.2d 328 (6th Dist.1983). *State v. Greene*, 8th Dist. Cuyahoga No. 91104, 2009-Ohio-850, ¶ 24.

{¶ 54} The proper methodology "in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72." *In re F. S.*, 10th Dist. Franklin No. 11AP-244, 2011-Ohio-6135, ¶ 7, citing *State v. Gonzalez*, 10th Dist. Franklin No. 08AP-716, 2009-Ohio-3236, ¶ 9.

{¶ 55} R.C. 2945.72 provides the tolling provisions for speedy trial computation. "However * * * those extensions must be strictly construed against the state." *State v. Williams*, 8th Dist. Cuyahoga No. 107748, 2020-Ohio-378, ¶ 11, citing *State v. Sanders*, 8th Dist. Cuyahoga No. 107253, 2019-Ohio-1524. R.C. 2945.72 provides in relevant part:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
>
> * * *
>
> (C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in

providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion * * *.

R.C. 2945.72(C), (D), (E), and (H).

{¶ 56} According to the record, Yates was arrested on January 13, 2019. He argues that his speedy trial time expired on April 13, 2019, unless extended. According to Yates's calculations, he was incarcerated for 421 days and only 186 were tolled. Yates argues that a number of continuances do not provide a reason for the continuance nor do the entries indicate who made the request. Yates relies on *In re D.S.*, 8th Dist. Cuyahoga No. 97757, 2012-Ohio-2213, for the premise that an entry that does not indicate a reason for continuance or party to be charged is not chargeable to the defendant. *Id.* at ¶ 19, citing *State v. Gabel*, 8th Dist. Cuyahoga No. 69607, 1996 Ohio App. LEXIS 4771, at *8 (Oct. 31, 1996).

{¶ 57} The state concedes that Yates has made a prima facie case that he was incarcerated for 421 days, which exceeds the statutory 270-day limit. However, the state claims that 349 days tolled the speedy trial time. Thus, "seventy-two (72) days counted towards the Defendant's statutory speedy trial time. Seventy-two (72)

multiplied by three (3) is two hundred sixteen (216) speedy trial days, which ran from the date of the arrest until trial commenced." Appellee brief, p. 22.

**{¶ 58}** Our de novo review begins with the January 13, 2019 date of arrest to the March 9, 2020 day of trial. *State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, ¶ 20. We first determine "whether the number of days not tolled under exceeds the time limits * * * of R.C. 2945.71." *Id.* at ¶ 19. The date of arrest is not included in a speedy trial calculation. *Id.* at ¶ 20.

**{¶ 59}** Beginning with January 14, 2019, the day after arrest to January 28, 2019, the date of arraignment, 15 days (14th to 28th included) accrued for speedy trial purposes. On January 29, 2019, the defense served discovery on the state and the state responded on February 8, 2019. "A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery or for a reasonable time, whichever is sooner." *Garner* at ¶ 21, citing *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E). Thus, those days were tolled for speedy trial purposes.

**{¶ 60}** Also on February 8, 2019, the state served discovery on the defense. The state argues that the response was never received. However, the record reflects that Yates filed a response on August 3, 2019. Thirty days is deemed a "reasonable" time to respond, and the period of tolling begins after that point. *Id.* at ¶ 29. The 30-day period in favor of the defense for speedy trial purposes began on February 9, 2019, and ended on March 10, 2019. The tolled period covered March 11, 2019, to August 3, 2019, which equals 146 days.

{¶ 61} On July 10, 2019, the parties appeared for trial. Defense counsel and the trial court were unavailable until October 2, 2019. The trial was scheduled for October 2, 2019. This extended the tolling period from August 4, 2019, to October 2, 2019, which increased the 146 days by an additional 60 days to 206 days.

{¶ 62} As of October 2, 2019, a total of 45 days had accrued for speedy trial purposes. The next event in Yates's favor for speedy trial purposes is a 19-day period from October 3, 2019, when the trial was continued because the prosecutor was in trial, to October 21, 2019. Subsequent continuances were at the request of the defense or jointly by the defense and trial court. The next and final period in Yates's favor is from January 8, 2020, to January 29, 2020, when trial was continued at the state's request, a total of 22 days.[1]

{¶ 63} The total days for speedy trial purposes is 86 days, which multiplied by three, totals 258 speedy trial days. Therefore, the 270-day speedy trial limit has not been reached.

{¶ 64} We have already determined that the alleged hearsay and juror issues lacked merit. "'Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of

---

[1] The state argues that the 19- and 22-day continuances that were granted at the prosecutor's request on October 3, 2019, and Jan 8, 2020, also tolled the speedy-trial clock. "Whether these continuances were 'reasonable and necessary' is immaterial, however, because it would not affect our conclusion that [appellant] was brought to trial well within 270 days of his indictment as required by R.C. 2945.71(C)(2)." *See also* [*State v.*] *Crawford*, [6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660,] at ¶ 41, fn. 2. *State v. Crawford*, 6th Dist. Lucas No. L-17-1296, 2019-Ohio-3123, ¶ 31, fn. 2.

reasonable representation and, in addition, prejudice arises from counsel's performance.'" *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 57 (8th Dist.), quoting *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001). Thus, in light of our finding that the assigned errors are unsubstantiated, we do not find that counsel was ineffective.

**{¶ 65}** The fifth assigned error also lacks merit.

## IV. Conclusion

**{¶ 66}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR